# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN HART, | : |
| **Plaintiff,** | : |
| v. | : Civil Action<br>: No. 13-6662 |
| STEVEN PARKINSON, et al., | : |
| **Defendants.** | : |

## DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS

Defendants Detective Steven Parkinson and Kathryn Gordon (collectively, "Defendants") hereby serve this Statement of Undisputed Material Facts in support of summary judgment pursuant to Federal Rule of Civil Procedure 56 and the Court's policies and procedures.

1. Plaintiff's Amended Complaint stems from the investigation, arrest, prosecution, and his conviction for Harassment pursuant to 18 Pa.C.S.A. § 2709(A)(1) and Stalking pursuant to 18 Pa.C.S.A. § 2709.1(A)(1) of victim Erika Von Tiehl. (*See generally* Amended Complaint, attached as Exhibit A, John Hart Secure Docket Sheet at pg. 8, attached as Exhibit B).

**RESPONSE:** The evidence that Defendants have cited does not support this factual assertion and is not admissible. By way of further answer, Plaintiff's Amended Complaint pertains to the investigation and subsequent search of Plaintiff's residence and Plaintiff's electronic devices. (*See* generally Amended Complaint, attached as Exhibit A). In addition, Plaintiff was acquitted at trial of Identity Theft, 18 Pa.C.S.A. § 4120, Unlawful Use of a Computer, 18 Pa.C.S.A. § 7611, Disruption of Service, 18 Pa.C.S.A. § 7612, and Possession of an Instrument of Crime, 18 Pa.C.S.A. § 907. (*See* John Hart Secure Docket Sheet, attached as Defendants' Exhibit B). Plaintiff was acquitted of all of the offenses that served as the course of conduct for which he was convicted. Nevertheless, neither Plaintiff's convictions nor his acquittals are material to the case at hand.

**REPLY:** Defendants rely on the accuracy of Plaintiff's Amended Complaint and Secure Court Summary attached as Exhibits A and B, respectively. Plaintiff's response does not demonstrate a dispute of material fact and is otherwise not responsive to Defendants' statement of undisputed material fact in the above paragraph.

2. Plaintiff's remaining claim stems from the alleged violation of his Fourth Amendment rights as they relate to the search of his desktop, laptop, and iPhone as set forth in Count I of Plaintiff's Amended Complaint. (Ex. A at ¶¶ 37, 40).

**RESPONSE:** Plaintiff objects to Defendants' use of the term "remaining claim". By way of further answer, Defendants filed a Motion to Dismiss Plaintiff's Amended Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). On February 13, 2023, the Court issued an Order allowing Plaintiff's Fourth Amendment claim against Defendants for the unconstitutional search of his electronic devices to proceed.

**REPLY:** Defendants rely on the accuracy of this Court's order. (ECF No. 41). Although Plaintiff objects to a portion of the above paragraph, at appears that he agrees that the claim at issue is a Fourth Amendment unconstitutional search claim. Plaintiff's response does not otherwise demonstrate a dispute of material fact.

3. During the investigation and prosecution of Plaintiff for stalking, harassment, and related offenses associated with victim Erika Von Tiehl, Plaintiff was being investigated and prosecuted for stalking, harassment, and related offenses associated with victim Laura Selvage. (*See* Investigation Report and Affidavit of Probable Cause – Laura Selvage Case, attached collectively as Exhibit C, *see also* Investigation Report and Affidavit of Probable Cause – Erika Von Tiehl Case at pg. 5, attached collectively as Exhibit D).

**RESPONSE:** The evidence that Defendants have cited does not support this factual assertion and is not admissible. By way of further answer, on November 16, 2011, Plaintiff was arrested based on allegations of criminal activity made by Erika Von Tiehl, and on this same day, the Haverford Township Police Department, by and through Defendant Parkinson, executed a search warrant on Plaintiffs residence. (Ex. E-Parkinson Dep. 6:8-7:12, P-1, 7/7/23). In order to search Plaintiff's residence, which was located outside of Philadelphia County, Defendant Parkinson provided the details of his investigation to the Haverford Township Police Department and requested that they draft a search warrant and affidavit of probable cause for the local magistrate to approve. (Ex. E-Parkinson Dep. 6:8-7:12, P-1, 7/7/23). The search warrant and affidavit of probable cause for Plaintiff's residence was based on allegations of criminal activity made by the complainant, Erika Von Tiehl. (Ex. E-Parkinson Dep. 7:23-8:8, 10:5-11:10, P-1, 7/7/23). Defendant Kathryn Gordon accompanied Defendant Parkinson during this search even though she was not assisting Defendant Parkinson in his investigation, and was at Plaintiffs residence "just as an extra body". (Ex. I-Gordon Dep. 4:23-6:5, 7/6/23). Defendant Gordon did not interview and take a written statement from Laura Selvage until November 20, 2011. (*See* Exhibit C).

In addition, on April 22, 2011, Laura Selvage filed for and received an ex-parte temporary restraining order in Baltimore County, Maryland against Plaintiff, but after a full and final

2

evidentiary hearing was held on April 29, 2011, the presiding judge dismissed the restraining order, finding by a preponderance of the evidence that Plaintiff did not commit any of the acts which Laura Selvage alleged. (*See generally* Amended Complaint, *Hart v. Gordon*, U.S.D.C. Docket No. 14-cv-3097). The Baltimore County State's Attorney's Office then convened a grand jury in May of 2011 seeking to indict Plaintiff for the identical course of conduct which was adjudicated in Plaintiff's favor by the presiding judge in the restraining order case, but the grand jury recommended that no criminal charges be filed against Plaintiff. (*See* generally Amended Complaint, *Hart v. Gordon*, U.S.D.C. Docket No. 14-cv-3097). On April 3, 2012, Defendant Gordon filed for and received only an arrest warrant for Plaintiff based upon the same course of conduct that was adjudicated in Plaintiffs favor at both the grand jury proceeding and the restraining order hearing, but these criminal charges were dismissed by the Common Pleas Court in May of 2016 for lack of jurisdiction. (*See generally* Amended Complaint, Hart v. Gordon, U.S.D.C. Docket No. 14-cv-3097; *see also* John Hart Docket Sheet, Philadelphia Common Pleas Court Docket No. 13761-2012). Nevertheless, the forensic examination of Plaintiffs electronic devices based on Defendant Parkinson's search warrants concluded on April 2, 2012, one day prior to Defendant Gordon obtaining her arrest warrant for Plaintiff. (Ex. E- Parkinson Dep. 20:5-20:8, 20:22-21:1, P-7, 7/7/23; *see also* Exhibit C).

**REPLY:** Defendants rely on the investigation reports and affidavits of probable cause for each victim, Ms. Von Tiehl and Ms. Selvage attached as Exhibits C and D, respectively. Plaintiff's response does not demonstrate a dispute of material fact as it is not responsive to Defendants' statement of undisputed material fact in the above paragraph.

4. Detective Parkinson was assigned to the investigation involving victim Erika Von Tiehl, and Kathryn Gordon was assigned to the investigation involving victim Laura Selvage. (*See* Ex. C at pg. 1, Ex. D at pg. 1).

**RESPONSE:** The evidence that Defendants have cited does not support this factual assertion and is not admissible. By way of further answer, Defendant Parkinson was the lead investigator in the criminal case involving Erika Von Tiehl. (Ex. E- Parkinson Dep. 26:8-26:22, 7/7/23). Defendant Gordon was not assisting in Defendant Parkinson's investigation and had no search warrant or affidavit of probable cause to conduct her own investigation. (Ex.1-Gordon Dep. 13:15-13:19, P-1, 7/6/23). Defendant Gordon accompanied Defendant Parkinson during the search of Plaintiffs residence as "just as an extra body". (Ex. I-Gordon Dep. 4:23-6:5, 7/6/23). It is not relevant to the case at bar whether Defendant Gordon was assigned to the investigation involving Laura Selvage.

**REPLY:** Defendants rely on the investigation reports and affidavits of probable cause for each victim, Ms. Von Tiehl and Ms. Selvage attached as Exhibits C and D, respectively. Plaintiff's response does not demonstrate a dispute of material fact as it is not responsive to Defendants' statement of undisputed material fact in the above paragraph.

5. The Von Tiehl and Selvage investigations were joint investigations and running side-by-side. (*See* 7/7/23 Deposition of Steven Parkinson at 11:11-14, 33:9-23, attached as Exhibit E).

**RESPONSE:** The evidence that Defendants have cited does not support this factual assertion and is not admissible. By way of further answer, the search warrant and affidavit of probable cause for Plaintiffs residence was based on allegations of criminal activity made by the complainant, Erika Von Tiehl. (Ex. E-Parkinson Dep. 7:23-8:8, 10:5-11:10, P-1, 7/7/23). Defendant Kathryn Gordon accompanied Defendant Parkinson during this search-even though she was not assisting Defendant Parkinson in his investigation but was there as "just an extra body". (Ex. I-Gordon Dep. 4:23-6:5, 7/6/23). The search warrants and affidavits of probable cause for Plaintiffs residence and Plaintiffs electronic devices were not based on allegations of criminal activity made Laura Selvage. (Ex. E-Parkinson Dep. 28:20-28:23, P-1, 7/7/23). There is nothing in either the search warrant or affidavit of probable cause for Plaintiffs residence which references any "joint investigation". (*See* Search Warrant for 2513 Prescott Road, attached as Ex. F). Further, the search warrants and affidavits of probable cause for Plaintiffs electronic devices also do not mention any "joint investigation". (*See* Search Warrants for Devices, attached as Ex. G).

**REPLY:** Defendants rely on Detective Parkinson's deposition transcript attached as Exhibit E. Plaintiff's response does not demonstrate a dispute of material fact

6. On November 16, 2011, Haverford Township Police Department executed a search warrant of Plaintiff's address at 2513 Prescott Road in Havertown, Pennsylvania in which Plaintiff's laptop, desktop, and iPhone were seized. (*See* Search Warrant for 2513 Prescott Road, attached as Exhibit F).

**RESPONSE:** The evidence that Defendants have cited does not support this factual assertion and is not admissible. By way of further answer, the Haverford Township Police Department, by and through Defendant Parkinson, executed a search warrant on Plaintiffs residence. (Ex. E-Parkinson Dep. 6:8-7:12, P-1, 7/7/23). In order to search Plaintiffs residence, which was located outside of Philadelphia County, Defendant Parkinson provided the details of his investigation to the Haverford Township Police Department and requested that they draft a search warrant and affidavit of probable cause for the local magistrate to approve. (Ex. E-Parkinson Dep. 6:8-7:12, P-1, 7/7/23; *see also* Defendants' Ex. F).

**REPLY:** Defendants rely on the accuracy and authenticity of the search warrant attached as Exhibit F. Plaintiff's response does not demonstrate a dispute of material fact and is otherwise not responsive to Defendants' statement of undisputed material fact in the above paragraph.

7. Detective Parkinson drafted three search warrants for each of Plaintiff's electronic devices (laptop, desktop, and iPhone) which detail that these items be searched for "[r]ecords or information related to identity theft, stalking and harassment electronically stored within . . . ." (*See* Search Warrants for Devices, attached as Exhibit G).

4

**RESPONSE:** The evidence that Defendants have cited does not support this factual assertion and is not admissible. By way of further answer, on November 21, 2011, Defendant Parkinson drafted three search warrants to search through Plaintiffs desktop computer, laptop computer, and iPhone. (Ex. E-Parkinson Dep. 13:2-13:6, P-2, P-3, P-4, 7/7/23). Both the search warrants themselves and the affidavits of probable cause for each of these search warrants were based on the allegations of criminal activity made by Erika Von Tiehl. (Ex. E Parkinson Dep. 14:2-14:7, 15:8-15:13, 7/7/23). Further, in the section of each search warrant marked "Probable Cause Belief Is Based On The Following Facts And Circumstances", Defendant Parkinson wrote "John Hart would call complainant's cell phone company and cable company pretending to be the complainant, in an attempt to change or shut off service", which allegation of criminal activity pertains only to Erika Von Tiehl. (*See* Search Warrants for Devices, attached as Exhibit G).

**REPLY:** Defendants rely on the accuracy and authenticity of the search warrant attached as Exhibit F. Plaintiff's response does not demonstrate a dispute of material fact and is otherwise not responsive to Defendants' statement of undisputed material fact in the above paragraph.

8. A list of search terms relating to both the Von Tiehl and Selvage investigations were compiled and sent to the FBI Forensic examiner, Michael Irvin, to use as an aid in searching Plaintiff's computer. (*See* Search Terms, attached as Exhibit H, *see also* 7/6/23 Deposition of Kathryn Gordon at 8:9-13, attached as Exhibit I).

**RESPONSE:** The evidence that Defendants have cited does not support this factual assertion and is not admissible. By way of further answer, there was no list of search terms relating to both Von Tiehl and Selvage that was compiled and sent to the forensic examiner, as Defendant Parkinson testified that he was unsure whether Defendant Gordon sent the 40 terms which she wanted examined directly to the forensic examiner herself, or whether she provided these search terms to him in order that he forward the terms to the forensic examiner. (Ex. E - Parkinson Dep. 25: 1-26 :7, 7 /7 /23) In addition, Defendant Gordon testified that she was unsure whether she provided her 40 search terms directly to the forensic examiner or to Defendant Parkinson so that he could provide these search terms to the forensic examiner. (Ex. I-Gordon Dep. 10:6-10:14, 11:17-11:24, 7/6/23) Regardless, both the search warrants for Plaintiff's electronic devices and the affidavits of probable cause for each of these search warrants were based on the allegations of criminal activity made by Erika Von Tiehl. (Ex. E -Parkinson Dep. 14:2-14:7, 15:8-15:13, 7/7/23). The search warrants for Plaintiffs electronic devices and the affidavits of probable cause for each of these search warrants were not based on the allegations made by Laura Selvage. (Ex. E - Parkinson Dep. 28:20-28:23, 7/7/23). Defendant Parkinson only provided 15 search terms to the forensic examiner, while Defendant Gordon provided 40 search terms to have examined. (Ex. E -Parkinson Dep. 24:15-25:14, P-5, 7/7/23; Ex. I-Gordon Dep. 7:16-8:8, P-1, 7/6/23). Defendant Gordon never obtained any warrant to have the forensic examiner search for any of the te1ms which she provided. (Defendants' Ex. I-Gordon Dep. 13:15-13:19, P-1, 7/6/23). Defendant Parkinson testified that there were no exigent circumstances which would have permitted a search of Plaintiff's electronic devices without a warrant. (Ex. E-Parkinson Dep. 5:18-6:7, 14:8-14:23, 7/7/23).

Defendant Parkinson requested that the forensic examiner search through all of Plaintiff's electronic devices and target both individuals and i.p. addresses for individuals other than Erika Von Tiehl. (Ex. E -Parkinson Dep. 28:20-28:23, 30:3-30:20, 34:15-34:24, 40:10- 40:14, P-8, 7/7/23). Defendant Parkinson requested that the forensic examiner search through all available data from Plaintiff's cell phone. (Ex. E -Parkinson Dep. 30:21-31:3, 32:8-32:16, P-7, 7/7/23). Defendant Parkinson requested that the forensic examiner search through all of Plaintiff's electronic devices to obtain all i.p. addresses, all social security numbers, all emails, all internet cache, all internet cookies, all internet history, and all Word documents because Defendant Parkinson believed that there may have been other "stalking victims" who he did not yet know about. (Ex. E-Parkinson Dep. 31:13-31 :22, P-7, 7 /7 /2"3). Defendant Parkinson told the forensic examiner to search through all of Plaintiffs electronic devices and capture information on other "victims" who the forensic examiner may find during the examination. (Ex. E -Parkinson Dep. 32:17-32:22, P-7, 7/7/23). Defendant Parkinson requested that the forensic examiner search through all of Plaintiff's electronic devices for all jpeg graphics and all PDF files. (Ex. E -Parkinson Dep. 36:20-36:24, P-7, 7/7/23). Defendant Parkinson requested that the forensic examiner search through all of the electronic devices for photos of news anchors such as Erika Von Tiehl. (Ex. E - Parkinson Dep. 38:17-38:20, P-7, 7/7/23).

**REPLY:** Plaintiff's lengthy response to a concise, one-sentence, innocuous statement of undisputed material fact is unnecessary, inefficient, not responsive, and not in good faith. Such response is contrary to the purpose of this practice. Defendants rely on the accuracy of the Search Terms document and Detective Gordon's deposition transcript attached as Exhibits H and I, respectively. Plaintiff's response otherwise does not demonstrate a dispute of material fact.

9. During his criminal trial, Plaintiff litigated a motion to suppress as it related to the search of Plaintiff's laptop, desktop, and iPhone. (*See* 11/4/15 Notes of Testimony at 71:4-9, 11-17, attached as Exhibit J).

**RESPONSE:** The evidence that Defendants have cited does not support this factual assertion and is not admissible. By way of further answer, Plaintiff never litigated any motion to suppress during his criminal trial. (*See* 11/4/15 Notes of Testimony attached as Defendants' Ex. J). In fact, Plaintiff was not proceeding pro se at his criminal trial. (*See* 11/4/15 Notes of Testimony attached as Defendants' Ex. J). At all times during his trial, Plaintiff was represented by criminal defense attorney Jack McMahon. (*See* 11/4/15 Notes of Testimony attached as Defendants' Ex. J). Mr. McMahon made an oral motion to suppress during Plaintiff's criminal trial, and that oral motion was opposed by Assistant District Attorney Lauren Katona on behalf of the Commonwealth of Pennsylvania. (*See* 11/4/15 Notes of Testimony attached as Defendants' Ex. J). Neither Defendant Parkinson nor Defendant Gordon testified at this hearing, and neither were parties to Plaintiffs criminal case in the Common Pleas Court in their individual capacities. (*See* 11/4/15 Notes of Testimony attached as Defendants' Ex. J). Therefore, res judicata does not apply, not only because Defendants Parkinson and Gordon are not in privity with the government in Plaintiff's prior criminal prosecution, but because the parties in the instant civil matter are not bound by the decision of the Common Pleas Court. *See Skunda v. Pennsylvania State Police*, 47 F. App'x 69, 71 (3d Cir. 2002) (citing *Smith v. Holtz*, 210 F.3d 186, 199-200 n. 18 (3d Cir.2000)). Moreover, during the course of the underlying criminal appeal, United States Magistrate Judge Carol Sandra Moore

Wells surmised that Defendants Parkinson and Gordon did, in fact, violate Plaintiff's Fourth Amendment rights. (*See* Report and Recommendation, 5/19/20, pp. 13-14, U.S.D.C. Civil Action No. 18-4402).

**REPLY:** Defendants rely on the accuracy of the Notes of Testimony from Plaintiff's criminal trial attached as Exhibit J. Plaintiff's response is not responsive to Defendants' statement of undisputed material fact in the above paragraph. Also, it should be noted that Plaintiff misrepresents Judge Wells' determination in her Report and Recommendation. Regardless, Plaintiff's response does not demonstrate a dispute of material fact.

      10.      Specifically, this motion to suppress challenged the search terms given to Mr. Irvin to aid in reviewing the contents of Plaintiff's laptop, desktop, and iPhone, arguing that the search "exceeded the limits that were authorized by the three search warrants." (Ex. J at 72:3-16, Ex. G, Ex. H).

**RESPONSE:** The evidence that Defendants have cited does not support this factual assertion and is not admissible. By way of further answer, Plaintiff never litigated any motion to suppress during his criminal trial. (*See* 11/4/15 Notes of Testimony attached as Defendants' Ex. J). At all times during his trial, Plaintiff was represented by criminal defense attorney Jack McMahon. (*See* 11/4/15 Notes of Testimony attached as Ex. J). Mr. McMahon made an oral motion to suppress during Plaintiff's criminal trial, and that oral motion was opposed by Assistant District Attorney Lauren Katona on behalf of the Commonwealth of Pennsylvania. (*See* 11/4/15 Notes of Testimony attached as Ex. J). Neither Defendant Parkinson nor Defendant Gordon testified at this hearing, and neither were parties to Plaintiff's criminal case in the Common Pleas Court in their individual capacities. (*See* 11/4/15 Notes of Testimony attached as Ex. J). Therefore, res judicata does not apply, not only because Defendants Parkinson and Gordon are not in privity with the government in Plaintiff's prior criminal prosecution, but because the parties in the instant civil matter are not bound by the decision of the Common Pleas Court. *See Skunda v. Pennsylvania State Police*, 47 F. App'x 69, 71 (3d Cir. 2002) (citing *Smith v. Holtz*, 210 F.3d 186, 199-200 n. 18 (3d Cir.2000)). Moreover, during the course of the underlying criminal appeal, United States Magistrate Judge Carol Sandra Moore Wells surmised that Defendants Parkinson and Gordon did, in fact, violate Plaintiff's Fourth Amendment rights. (*See* Report and Recommendation, 5/19/20, pp. 13-14, U.S.D.C. Civil Action No. 18-4402). Plaintiff objects to Defendants' mischaracterization of the arguments presented at this hearing, and the arguments which took place in the Common Pleas Court are not relevant to the instant matter.

**REPLY:** Defendants rely on the accuracy of the Notes of Testimony and the three search warrants attached as Exhibits J and H, respectively. Plaintiff's response resembles a legal argument and is otherwise not responsive to the statement of undisputed material fact in the above paragraph. It should be noted that Plaintiff again misrepresents Judge Wells' determination in her Report and Recommendation. Regardless, Plaintiff's response does not demonstrate a dispute of material fact.

11. After a hearing and argument on the motion, the Honorable Judge Gwendolyn Bright denied Plaintiff's motion to suppress as the Commonwealth specifically argued that the search warrants of the devices encompassed the search terms that were provided to Mr. Irvin. In other words, the Commonwealth argued that evidence of not just victim Erika Von Tiehl, but other individuals that Plaintiff stalked is encompassed in the search warrants for Plaintiff's devices. (Ex. J at 88:20-25, 89:4-14, 90:6-9).

**RESPONSE:** The evidence that Defendants have cited does not support this factual asse1iion and is not admissible. By way of further answer, Plaintiff never litigated any motion to suppress during his criminal trial. (*See* 11/4/15 Notes of Testimony attached as Ex. J). At all times during his trial, Plaintiff was represented by criminal defense attorney Jack McMahon. (*See* 11/4/15 Notes of Testimony attached as Ex. J). Mr. McMahon made an oral motion to suppress during Plaintiff's criminal trial, and that oral motion was opposed by Assistant District Attorney Lauren Katona on behalf of the Commonwealth of Pennsylvania. (*See* 11/4/15 Notes of Testimony attached as Ex. J). Neither Defendant Parkinson nor Defendant Gordon testified at this hearing, and neither were parties to Plaintiff's criminal case in the Common Pleas Court in their individual capacities. (*See* 11/4/15 Notes of Testimony attached as Ex. J). Therefore, res judicata does not apply, not only because Defendants Parkinson and Gordon are not in privity with the government in Plaintiffs prior criminal prosecution, but because the parties in the instant civil matter are not bound by the decision of the Common Pleas Court. *See Skunda v. Pennsylvania State Police*, 47 F. App'x 69, 71 (3d Cir. 2002) (citing *Smith v. Holtz*, 210 F.3d 186, 199-200 n. 18 (3d Cir.2000)). Moreover, during the course of the underlying criminal appeal, United States Magistrate Judge Carol Sandra Moore Wells surmised that Defendants Parkinson and Gordon did, in fact, violate Plaintiff's Fourth Amendment rights. (*See* Report and Recommendation, 5/19/20, pp. 13-14, U.S.D.C. Civil Action No. 18-4402). Plaintiff objects to Defendants' mischaracterization of the Commonwealth's arguments presented at this hearing, and the Commonwealth's arguments which took place in the Common Pleas Court are irrelevant to the instant matter.

**REPLY:** Defendants rely on the accuracy of the Notes of Testimony and the three search warrants attached as Exhibits J as they speak for themselves. Again, Plaintiff's response resembles a legal argument and is otherwise not responsive to the statement of undisputed material fact in the above paragraph. It should be noted that Plaintiff again misrepresents Judge Wells' determination in her Report and Recommendation. Regardless, Plaintiff's response does not demonstrate a dispute of material fact.

12. During the time of the forensic review of Plaintiff's electronic devices, Mr. Irvin created an activity and communications log in conjunction with his review, detailing specifically that on February 10, 2012, he "[d]iscussed with Detective Parkinson the potential for privileged information with respect to Word documents that appeared to be legal in nature. I inquired about

8

if he was going to have a taint review of the evidence. Detective Parkinson informed me that the subject was suspected of forging legal documents and therefore the legal documents needed to be investigated and are part of this exam." (*See* Philadelphia Regional Computer Forensic Laboratory Activity and Communications Log, attached as Exhibit K).

**RESPONSE:** The evidence that Defendants have cited does not support this factual assertion and is not admissible. By way of further answer, in addition to this conversation on February 10, 2012, the forensic examiner had at least one other discussion with Defendant Parkinson, that being on March 23, 2012, about the potential for privileged information with respect to Word documents that appeared to be legal in nature and whether to have a taint review of the evidence, but Defendant Parkinson again told the forensic examiner that Plaintiff was suspected of forging legal documents and to not conduct a taint review because the legal documents needed to be investigated. (Ex. E- Parkinson Dep. 35:1- 35:17, 36:12- 36:19, P-7, 7/7/23). Defendant Parkinson told the forensic examiner to search this information even though Defendant Parkinson himself had never seen any evidence that Plaintiff had ever forged any document. (Ex. E- Parkinson Dep. 11:15- 11:21, 7/7/23). The sole basis for Defendant Parkinson's claim that Plaintiff forged legal documents was a comment that Defendant Gordon may have made to him. (Defendants' Ex. E- Parkinson Dep. 35:21- 36:11, 7/7/23). The search warrants and affidavits of probable cause for Plaintiffs electronic devices are bare of any assertion that Plaintiff ever forged any document. (*See* Search Warrants for Devices, attached as Exhibit G).

**REPLY:** Defendants rely on the accuracy of Philadelphia Regional Computer Forensic Laboratory Activity and Communications Log attached as K as the document speaks for itself. Plaintiff's response does not demonstrate a dispute of material fact and is otherwise not responsive to Defendants' statement of undisputed material fact in the above paragraph.

13. Detective Gordon testified at a prior deposition that letters were taken in connection with a search warrant for Plaintiff's prior residence at 4040 Presidential Boulevard as the result of a prior criminal investigation where Plaintiff was arrested for robbery kidnapping, and sexually assaulting a prior ex-girlfriend. These letters appeared to be from John Hart, presenting himself as an attorney and a war veteran. (2/1/18 Deposition of Detective Kathryn Gordon at 98:15-24, 99:1-23, 100:5-18, 101:9-24, attached as Exhibit L, *see also* John Hart Letters, attached as Exhibit M, *see also* Seach Warrant for 4040 Presidential Blvd, attached as Exhibit N).

**RESPONSE:** The evidence that Defendants have cited does not support this factual assertion and is not admissible. By way of further answer, Plaintiff has never been arrested for robbery, kidnapping, or sexually assaulting a prior ex-girlfriend. (Ex. L-Gordon Dep. 68:12- 73: 12, 2/1/18). Moreover, no criminal charges were ever filed against Plaintiff stemming from Defendant

Gordon's search of the residence at 4040 Presidential Boulevard. (Ex. L- Gordon Dep. 68:12-73:12, 2/1/18; Defendants' Exhibit N) In addition, Plaintiff never had a prior residence at 4040 Presidential Boulevard. (Defendants' Ex. L-Gordon Dep. 138:13-140:8, 2/1/18). Plaintiff never authored any of the letters that Defendants have attached as Exhibit M and sua sponte labeled "John Hart Letters". Defendant Gordon testified that she couldn't recall how she came into possession of the letters attached as Exhibit M, and whether she obtained a physical hard copy or if the letters were recovered from a computer. (Ex. I-Gordon Dep. 15:10-15:16, 7/6/23). Defendant Gordon testified that she didn't recall discussing these letters with Defendant Parkinson. (Ex. I-Gordon Dep. 16:19-16:21, 7/6/23). Defendant Gordon testified that she never initiated or conducted any investigation of these letters. (Ex. I-Gordon Dep. 17:2-17:14, 7/6/23). Defendant Gordon testified that she never spoke to Barry Goldstein regarding the authenticity of these letters even though his name is on the letterhead of each letter. (Ex. I-Gordon Dep. 17:21-18:7, 7/6/23). Defendant Gordon also testified that she didn't know who typed these letters. (Ex. I - Gordon Dep. 18:8-18:13, 7/6/23).

**REPLY:** Defendants rely on Detective Gordon's deposition testimony, John Hart Letters, and Search Warrant for 4040 Presidential Blvd. attached as Exhibits L, M, and O, respectively. Plaintiff's response does not demonstrate a dispute of material fact and is otherwise not responsive to Defendants' statement of undisputed material fact in the above paragraph.

14. Lieutenant John Walker testified that in November of 2011, during the execution of a search warrant, he observed in Plaintiff's basement multiple letters and court documents with names that were "clearly cut with something" and "clearly photocopied onto another sheet of paper" so "the judge's signature or the lawyer's signature was cut and pasted onto a legal form."

(*See* 12/11/17 Deposition of Lieutenant John Walker at 16:1-19, attached as Exhibit O).

**RESPONSE:** The evidence that Defendants have cited does not support this factual assertion and is not admissible. By way of further answer, Lieutenant Walker is a defendant in the action for which he was deposed, and that action is still pending. (Ex. O). Walker testified that Plaintiff forged letters which were supposed to have been from judges and attorneys based upon his observation of what he saw while executing the search warrant on Plaintiff's residence on November 16, 2011. (Ex. O -Walker Dep. 15:23-17:8, 32:5-32:12, 12/11/17). Both Walker and Defendant Gordon testified that there were at least three individuals living at Plaintiff's residence when Walker saw these alleged documents. (Ex. O-Walker Dep. 28:2-29:21, 12/11/17; Ex. L-Gordon Dep. 35:20-36:11, 2/1/18). Walker also testified that he could not tell by looking at the alleged documents who had actually forged the documents. (Ex. O-Walker Dep. 29:2-31:19, 48:7-50:19, 12/11/17).

Although Walker had originally testified that Plaintiff forged letters from attorneys and judges, Walker changed his story during his deposition and said that the signatures on the purported forged documents appeared to be cut and pasted on to a legal form and photocopied. (Ex. O-Walker Dep. 16:12-16:19, 32:5-33:20 12/11/17). Both Walker and Defendant Gordon testified that they didn't record or document these purported forged documents in any manner, and did not take any notes, pictures, or video of these forgeries. (Ex. O-Walker Dep. 41:15-41:17, 43:12-44:1, 12/11/17; Ex.

L - Gordon Dep. 27:17-27:20, 29:1-30:21, 2/1/18). When further pressed about why Walker did not document these forgeries in any manner, Walker testified that it was Defendant Gordon's responsibility to investigate them. (Ex. O-Walker Dep. 21:2-22:5, 44:22-45:17 12/11/17). By contrast, Defendant Gordon testified that it was Walker's responsibility, and not her responsibility, to investigate these forgeries. (Ex. L-Gordon Dep. 18:11-18:21, 2/1/18). 'What's more, Walker alleged that Defendant Gordon had contacted an attorney whose name was supposedly forged and that the attorney purportedly refused to be interviewed or provide any further information to Defendant Gordon, but Defendant Gordon testified that she has no recollection of ever contacting or speaking to any attorney about this. (Ex. O - Walker Dep. 41:18-42:2, 12/11/17; Ex. L-Gordon Dep. 36: 15-37:12, 2/1/18).

According to Walker, the search warrant for Plaintiffs residence permitted the police to take any evidence they found relating to identity theft. (Ex. O-Walker Dep. 26:9-26:18, 12/11/17). Nevertheless, Walker has no recollection of ever taking these purported forged documents from Plaintiff's residence or doing anything with these forgeries after observing them. (Ex. O-Walker Dep. 22:9-22:16, 23:17-24:1; 43:7-44:7, 12/11/17). Further, Defendant Gordon testified that she has no recollection of seeing any forged documents in Plaintiffs residence, and testified that she did not take any forged documents from Plaintiff's residence. (Ex. L-Gordon Dep. 29:4-29:19, 2/1/18). Moreover, Defendant Parkinson testified that he had never seen any evidence that Plaintiff had ever forged any document. (Ex. E-Parkinson Dep. 11:15-11:21, 7/7/23). In fact, the sole basis for Defendant Parkinson's claim to the forensic examiner that Plaintiff forged legal documents was a comment that Defendant Gordon may have made to him. (Ex. E-Parkinson Dep. 35:21-36:11, 7/7/23).

Both Walker and Defendant Gordon testified that they have no training in detecting forged signatures. (Ex. O-Walker Dep. 41:15-41:17, 12/11/17; Ex. L-Gordon Dep. 27:17-27:20, 2/1/18). Despite this Jack of training, Walker testified that in order to determine whether a document is forged, he would need to compare the forged document with the original signature, yet Walker testified that he never so much as attempted to contact any judge or any attorney to ascertain whether their signature was forged, or for that matter, obtain the original signature of any judge or attorney whose name was purportedly forged. (Ex. O-Walker Dep. 17:9-17:16, 18:15-18:21, 20:6-20:9, 41:10-41:1442:5-42:6 12/11/17). Most significantly, neither Walker, nor Defendant Gordon, nor Defendant Parkinson, nor any other law enforcement officer conducted any investigation into these purportedly forged documents. (Ex. O - Walker Dep. 18:22-19:6, 12/11/17; Defendants' Ex. L-Gordon Dep. 29:9-29:15, 2/1/18; Ex. E-Parkinson Dep. 11: 15-11 :21, 7/7/23).

**REPLY:** Plaintiff's lengthy response to concise quoted testimony from a deposition transcript is unnecessary, inefficient, not responsive, and not in good faith. Such response is contrary to the purpose of this practice. Defendants rely on the accuracy of Lieutenant Walker's deposition transcript attached as Exhibit O. Plaintiff's response otherwise does not demonstrate a dispute of material fact.

15. Detective Parkinson explained that he was probably told about Plaintiff being suspected of forging legal documents by another investigator, stating that it was probably Detective Gordon. (Ex. E at 35:18-24, 36:1-3).

**RESPONSE:** The evidence that Defendants have cited does not support this factual assertion and is not admissible. By way of further answer, Defendant Parkinson testified that he had never seen any evidence that Plaintiff had ever forged any document. (Ex. E-Parkinson Dep. 11:15-11:21, 7/7/23). In addition, the sole basis for Defendant Parkinson's claim that Plaintiff forged legal documents was a comment that Defendant Gordon may have made to him. (Ex. E-Parkinson Dep. 35:21-36:11, 7/7/23).

**REPLY:** Defendants rely on Detective Parkinson's deposition transcript attached as Exhibit E. To clarify the misrepresentations in Plaintiff's response, Detective Parkinson testified that he was "probably told by another investigator" as the basis for telling the forensic examiner that Plaintiff was suspected of forging documents, and that it was "probably Detective Gordon" who told him. (Ex. E. at 35:21-36:3). However, Plaintiff's response does not demonstrate a dispute of material fact.

16. Detective Parkinson explained that he does not have any idea what the legal documents referenced in the communications log may have been. (Ex. E at 36:17-19).

**RESPONSE:** The evidence that Defendants have cited does not support this factual assertion and is not admissible. By way of further answer, the forensic examiner discussed with Defendant Parkinson on multiple occasions the potential for privileged information with respect to Word documents that appeared to be legal in nature and whether to have a taint review of the evidence, but Defendant Parkinson told the forensic examiner that Plaintiff was suspected of forging legal documents and to not conduct a taint review because the legal documents needed to be investigated. (Ex. E-Parkinson Dep. 11:15-11:21, 7/7/23). Defendant Parkinson made this request to the forensic examiner even though Defendant Parkinson himself had never seen any evidence that Plaintiff had ever forged any document. (Ex. E – Parkinson Dep. 11:15-11:21, 7/7/23). The sole basis for Defendant Parkinson's claim that Plaintiff forged legal documents was a comment that Defendant Gordon may have made to him. (Ex. E - Parkinson Dep. 35:21-36:11, 7/7/23).

**REPLY:** Defendants rely on Detective Parkinson's deposition testimony attached as Exhibit E. To clarify the misrepresentations in Plaintiff's response, Detective Parkinson testified that he may have spoken to the forensic examiner multiple times about the issue related to the potential for privileged information. (Ex. A – Parkinson Dep. 35:1-17). Further, Detective Parkinson testified that he was "probably told by another investigator" as the basis for telling the forensic examiner that Plaintiff was suspected of forging documents, and that it was "probably Detective Gordon" who told him. (Ex. A. – Parkinson Dep. 35:21-36:3). However, Plaintiff's response does not demonstrate a dispute of material fact.

Respectfully submitted:

Date: September 1, 2023

/s/ *Daniel Cerone*
Daniel Cerone
Deputy City Solicitor
City of Philadelphia Law Department
Attorney for Defendants

Respectfully Submitted:

/s/ *John Hart*
John Hart
*Pro Se* Plaintiff