## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JOHN HART** | |
| *Plaintiff,* | |
| v. | **Case No. 2:13-cv-6662-JDW** |
| **STEVEN PARKINSON, et al.,** | |
| *Defendants.* | |

## <u>MEMORANDUM</u>

The illusory truth effect is a tendency to believe false information that someone repeats again and again. Essentially, someone talks you into something that you know to be false (or you talk yourself into it). In John Hart's case, he has told himself again and again that Detectives Steven Parkinson and Kathryn Gordon violated his rights during their investigation of him in the fall of 2011. Mr. Hart has pursued that argument for over a decade. But no matter how many times Mr. Hart repeats his assertion, he cannot go to trial without evidence that might persuade a reasonable juror that he's right. And he doesn't have that. He made his first argument—that Detectives Parkinson and Gordon used search terms that were too broad—to a judge in the Philadelphia Court of Common Pleas during criminal proceedings, and he lost. That decision continues to apply to him, even in a different forum and with different opponents. Mr. Hart's second argument—that Detective Parkinson authorized a search of potentially privileged files on his electronic devices—ignores the undisputed facts that made the search

reasonable. In any event, the doctrine of qualified immunity protects the Detectives

from Mr. Hart's claim about the privileged files. I will therefore grant Detective Parkinson

and Detective Gordon summary judgment.

## I.     BACKGROUND

### A.     Factual Background

In October 2011, Detective Steven Parkinson began in investigation into the

stalking and harassment of Erika Von Thiel, and Detective Kathryn Gordon began a

similar investigation about the stalking and harassment of Laura Selvage.  Mr. Hart was

the subject of both investigations. On November 16, 2011, Detectives Parkinson and

Gordon, acting with the Haverford Township Police Department, obtained and executed

warrants to search Mr. Hart's home. In executing that search, the police seized several

electronic devices, including a desktop computer, a laptop computer, and an iPhone.

Lieutenant John Walker of the Philadelphia Police observed falsified legal documents in

Mr. Hart's basement.

Detective Parkinson then obtained three search warrants to search those

electronic devices for "information related to identity theft, stalking, and harassment."

(ECF 62-8.) Detectives Parkinson and Gordon compiled a list of search terms for the

devices and sent them to an FBI forensic examiner, Michael Irvin. During his review, Mr.

Irvin noted in a log that he "[d]iscussed with Detective Parkinson the potential for

privileged information with respect to Word documents that appeared to be legal in

nature." (ECF No. 62-12 (entry for 2/10/2012).) Detective Parkinson told Mr. Irvin that Mr.

Hart "was suspected of forging legal documents and therefore the legal documents

needed to be investigated and are part of this exam." *Id.*

Mr. Hart was prosecuted for and convicted of harassment and stalking. During his

criminal case in the Court of Common Pleas of Philadelphia County, Mr. Hart, through

counsel, made an oral motion to suppress evidence, arguing that the list of search terms

"exceeded the limits that were authorized by the three search warrants." (ECF No. 62-11

at 72.) Judge Gwendolyn Bright of the Philadelphia Court of Common Pleas denied his

motion.

**B.     Procedural History**

Mr. Hart filed his original complaint on November 15, 2013, and an Amended

Complaint on December 1, 2022. He initially brought claims pursuant to 42 U.S.C. § 1983

for violations of his rights under the Fourth, Sixth, Ninth, and Fourteenth Amendments

during his criminal investigation and prosecution. The Supreme Court's decision in *Heck*

*v. Humphrey*, 512 U.S. 477 (1994), barred most of his claims, so I dismissed them. What

survived was a single alleged Fourth Amendment violation for unreasonable search and

seizure by Detectives Parkinson and Gordon of Mr. Hart's electronic devices. On

September 1, 2023, the Parties filed cross-motions for summary judgment. In summary

judgment briefing, the Parties clarify that Mr. Hart has two different theories of Fourth

Amendment violation: (a) Detectives Parkinson and Gordon used an overbroad list of

search terms in searching his devices; and (b) Detectives Parkinson and Gordon searched his devices without considering the possibility that they would tread on privileged material.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) permits a party to seek, and a court to enter, summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he plain language of Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quotations omitted). In ruling on a summary judgment motion, a court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (quotation omitted). However, "[t]he non-moving party may not merely deny the allegations in the moving party's pleadings; instead he must show where in the record there exists a genuine dispute over a material fact." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007) (citation omitted); *see also* Fed. R. Civ. P. 56(c)(1)(A)-(B).

The filing of cross-motions does not change this analysis. *See Transportes Ferreos de Venezuela II CA v. NKK Corp.*, 239 F.3d 555, 560 (3d Cir. 2001). It "does not constitute

an agreement that if one is rejected the other is necessarily justified or that the losing

party waives judicial consideration and determination whether genuine issues of

material fact exist." *Id.* (quotation omitted). Rather, "[w]hen confronted with cross-

motions for summary judgment 'the court must rule on each party's motion on an

individual and separate basis, determining, for each side, whether a judgment may be

entered in accordance with the Rule 56 standard.'" *Canal Ins. Co. v. Underwriters at*

*Lloyd's London*, 333 F. Supp. 2d 352, 353 n.1 (E.D. Pa. 2004), *aff'd*, 435 F.3d 431 (3d Cir.

2006) (citation omitted).

## III.    DISCUSSION

### A.    Search Terms

The Common Pleas Court that heard Mr. Hart's criminal case ruled on the

constitutionality of the search term list that Detectives Parkinson and Gordon used when

they searched his devices. The Supreme Court has held that when a state court has ruled

on an issue, a federal court must apply whatever preclusive effect that state's courts

would give to that ruling. *See Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81

(1984). Under Pennsylvania law, there are four essential elements of issue preclusion: (1)

an issue decided in a prior action is identical to the one presented in a later action; (2)

the prior action resulted in a final judgment on the merits; (3) the party against whom

issue preclusion is asserted was a party to the prior action; and (4) the party against

whom issue preclusion is asserted had a full and fair opportunity to litigate the issue in

the prior action. *See Rue v. K-Mart Corp.*, 713 A.2d 82, 84 (Pa. 1998). The party asserting

preclusion bears the burden of showing that it applies. *See Davis v. U.S. Steel Supply*,

688 F.2d 166, 170 (3d Cir. 1982) (*en banc*) (res judicata).

There are no factual disputes that prevent the application of collateral estoppel to

Mr. Hart's claim. *First*, the issue at the heart of this dispute is whether the use of search

terms used to collect information from Mr. Hart's devices violated his rights under the

Fourth Amendment. That's the same issue that Judge Bright resolved in ruling on Mr.

Hart's suppression motion in his state criminal proceedings. *Second*, Judge Bright ruled

against Mr. Hart, declining to exclude the collected information from evidence. (ECF No.

62, Ex. 11 at 89.) *Third*, Detectives Parkinson and Gordon are asserting issue preclusion

against Mr. Hart, who was a party to his own criminal prosecution. *Fourth*, and finally,

Mr. Hart had a full and fair opportunity to litigate the issue during his criminal

proceedings.

Mr. Hart argues that issue preclusion does not apply because he is *pro se* in this

case and he had a lawyer in the last case, so it's not the same person making the

argument. But Mr. Hart's lawyer made an argument on his behalf, and the specific

interlocutor—him or his lawyer—doesn't change the fact that he was a party to, and was

heard at, the state court proceeding.

Mr. Hart also argues that the state court's ruling doesn't apply in this case

because Detectives Parkinson and Gordon weren't parties to the state court

proceedings. Pennsylvania does not require mutuality of parties to enforce issue preclusion, however. *See In re Ellis' Estate*, 333 A.3d 728, 731 (Pa.1975); *Com., Dept. of Transp. V. Martinelli*, 563 A.2d 973 (Pa. Comm. Ct. 1989). Instead, under Pennsylvania law, the key factor is whether the party against whom issue preclusion is asserted has had a full and fair opportunity to litigate the issue in a prior action. *See Ellis' Estate*, 333 A.2d at 731. Mr. Hart had that in the Common Pleas Court because argument on Mr. Hart's suppression motion.

Finally, Mr. Hart notes that during habeas proceedings, a Magistrate Judge "surmised that Defendants Parkinson and Gordon did, in fact, violate Plaintiff's Fourth Amendment rights[.]" (ECF No. 62-1 at 6-7.) Again, this does not create a dispute of material fact. Mr. Hart concedes that Judge Bright ruled in the government's favor; subsequent second guessing does not invalidate this decision.

### B.   Attorney-Client Privilege

Issue preclusion does not bar Mr. Hart's claim that Detective Parkinson violated his Fourth Amendment rights by permitting Mr. Irvin to search privileged files, so I have to address the merits of that claim, including Detectives Parkinson's and Gordon's argument that the doctrine of qualified immunity immunizes them from liability. Qualified immunity "shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 566 U.S. 658, 664 (2012). Courts should

not "define clearly established law at a high level of generality." *Sauers v. Borough of Nesquehoning*, 905 F.3d 711, 716 (3d Cir. 2018). A court need not identify a case directly on point for a right to be clearly established, but "existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 137 S.Ct. 548, 551 (2017). As an affirmative defense, the burden of establishing qualified immunity falls on to the official claiming it. *See Burns v. Pa. Dep't of Corr.*, 642 F.3d 163, 176 (3d Cir. 2011).

To determine if an officer's conduct is entitled to qualified immunity, courts ask two questions: (1) whether the defendant's conduct violated a statutory or constitutional right; and (2) whether the right at issue was clearly established when the conduct took place. *See Sauers*, 905 F.3d at 716. In assessing a claim of qualified immunity, like any other aspect of a summary judgment ruling, a court must not resolve genuine disputes of fact in favor of the moving party; instead, it must decide whether the facts taken in the light most favorable to the non-moving party take the case to a place where the law is not clearly established. *See Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (*per curiam*). Because the first prong of qualified immunity overlaps with the merits of the claim, I address the Parties' arguments under the rubric of qualified immunity.

### 1.    Constitutional violation

The fundamental task of any Fourth Amendment analysis is "assessing the reasonableness of the government search." *U.S. v. Sczubelek*, 402 F.3d 175, 182 (3d Cir.

2005). The Fourth Amendment allows for searches of files that might include privileged material. *See, e.g.*, *In re Impounded Case (L. Firm)*, 840 F.2d 196, 200 (3d Cir. 1988). And, while searching an electronic search, there "may be no practical substitute for actually looking in many **(perhaps all)** folders and sometimes at the documents contained within those folders." *United States v. Stabile*, 633 F.3d 219, 239 (3d Cir. 2011).

The search of Mr. Hart's devices, including the search of files that might be privileged, was reasonable under the circumstances. The warrants authorized searches to find evidence of identity theft. Lieutenant Walker had observed evidence that Mr. Hart engaged in such conduct in connection with legal documents. It was therefore reasonable for Detective Parkinson to direct Mr. Irvin to search those files. Although Mr. Hart protests that he did not engage in such conduct, that's beside the point. What matters is that Detective Patterson had a reason to suspect that Mr. Hart engaged in that conduct and to search for evidence (as the search warrants authorized), making the search reasonable. And despite Mr. Hart's protestations, he has not pointed to any evidence that creates a triable issue of fact on this point. Mr. Hart also argues that Detective Parkinson did not have personal knowledge of the evidence of his identity theft. Even if that's true, it doesn't matter because Detective Parkinson could reasonably rely on what Lieutenant Walker told him.

Ultimately, Mr. Hart's claim operates from a logical failure: he appears to believe that, because an unreasonable search and seizure and a trespass of the attorney-client

privilege can each result in the exclusion of evidence, they are both constitutional

violations. But Mr. Hart provides no support for that position, nor have I found any.

Maybe it would have been a good idea for Detective Parkinson to use a taint team, but I

have not found, and Mr. Hart has not identified, any case that suggests that the Fourth

Amendment requires them.

## 2.    Clearly established right

In deciding whether a right is clearly established, the first step is to define the

right. In this case, the right in question is the right to exclude from a search files that

might contain privileged information when those files fall within the scope of a warrant.

As a threshold matter, it's not clear that such a right exists. A judge issued a search

warrant, and Detective Parkinson had a reasonable basis to think that the files at issue

fell within the scope of the warrant. But in any event, the Third Circuit's decision in

*Stabile*, which notes the common need for a comprehensive search of electronic files,

makes the scope of the right open to debate. The Third Circuit decided Stabile in

February 2011, nine months before the search of Mr. Hart's devices. At that point, the

law was, at best, in question as to whether the Fourth Amendment permitted a search of

potentially privileged files. In the face of that uncertainty, qualified immunity immunizes

Detectives Parkinson and Gordon from responsibility for conducting a search in that

legal gray area.

**IV.     CONCLUSION**

Mr. Hart may have convinced himself that Detectives Parkinson and Gordon violated his rights, but it's not enough for him to say it again and again. To get to a jury, he needs some evidence to support his belief, and he doesn't have it. I will therefore grant the Detectives' summary judgment motion. As a result, I do not need to reach Mr. Hart's summary judgment motion, which I will deny as moot.  An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.

January 10, 2024